**ROZIER HARDT MCDONOUGH PLLC**
Travis E. Lynch (SBN 335684)
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1862
Email: lynch@rhmtrial.com

**INSIGHT, PLLC**
Steven W. Ritcheson (SBN 174062)
578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (424) 289-9191
Email: switcheson@insightplc.com

*For Plaintiff FLEET CONNECT SOLUTIONS LLC*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC, | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR PATENT INFRINGEMENT** |
| TELETRAC NAVMAN US LTD., | |
| Defendant. | JURY TRIAL DEMANDED |

1

Plaintiff Fleet Connect Solutions LLC ("FCS" or "Plaintiff") files this Complaint against Teletrac Navman US Ltd., ("Teletrac" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"):

|     | U.S. Patent No. | Title | Available At |
| --- | --- | --- | --- |
| A. | 6,549,583 | Optimum Phase Error Metric For OFDM Pilot Tone Tracking In Wireless LAN | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6549583 |
| B. | 6,633,616 | OFDM Pilot Tone Tracking For Wireless LAN | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6633616 |
| C. | 6,941,223 | Method And System For Dynamic Destination Routing | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6941223 |
| D. | 7,058,040 | Channel Interference Reduction | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7058040 |
| E. | 7,123,926 | System And Method For Providing Information To Users Based On The User's Location | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7123926 |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| F. | 7,260,153 | Multi Input Multi Output Wireless Communication Method And Apparatus Providing Extended Range And Extended Rate Across Imperfectly Estimated Channels | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7260153 |
| G. | 7,450,955 | System And Method For Tracking Vehicle Maintenance Information | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7450955 |
| H. | 7,747,291 | Wireless Communication Method | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7747291 |
| I. | 8,005,053 | Channel Interference Reduction | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8005053 |
| J. | 8,862,184 | System And Methods For Management Of Mobile Field Assets Via Wireless Handheld Devices | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8862184 |
| K. | 10,671,949 | System And Methods For Management Of Mobile Field Assets Via Wireless Handheld Devices | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10671949 |

2.     Plaintiff seeks monetary damages.

**PARTIES**

3.     Plaintiff is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4.     Teletrac is a limited liability company organized under the laws of the State of Delaware with its principal place of business located at 310 Commerce, Suite 100, Irvine, California 92602.

5.     Teletrac may be served through its registered agent for service, 1505 Corporation CSC Lawyers Incorporating Service, located at 2710 Gateway Oaks Drive, Sacramento, California 95833.

## JURISDICTION AND VENUE

6.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.     Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9.     Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the California Long Arm Statute due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in California and in this district.

10.     Specifically, Defendant intends to do and does business in, and has committed acts of infringement in this District directly and through intermediaries, and offered its products or services, including those accused of infringement here, to customers and potential customers located in California, including in this

District.

11.    Defendant maintains regular and established places of business in this District.

12.    For example, Defendant owns, operates, manages, conduct businesses, and directs and controls the operations and employees of facilities at several locations in this District.

13.    Defendant maintains its principal place of business in this District.

14.    Defendant has committed acts of infringement from this district, including, but not limited to, use of the Accused Products.

**THE ACCUSED PRODUCTS**

15.    FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

16.    Based upon public information, Defendant owns, operates, advertises, and/or controls the website www.teletracnavman.com through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services.

17.    Defendant manufactures, uses, causes to be used, sells, offers for sale, provides, supplies, or distributes fleet management platform and tracking solution systems.

18.    Defendant manufactures, uses, causes to be used, sells, offers for sale, provides, supplies, or distributes the Teletrac Navman fleet management platform and tracking solution, which includes, but is not limited to, the TN480, ATS1, Qube300, VT101, VT102, ST101, SI201, RE200, RE400, AT301, MT201, MT501, Smart Quad-Dashcam, Smart Dual-Dashcam, TN360 - Power Take-Off Sensor, Fleet Director Tablet, Teletrac Drive Tablet (each of the forgoing, a "Teletrac Device," and collectively, the "Teletrac Devices"), Teletrac's ELD on TN360, DIRECTOR® Electronic Logging Device, TN360 Mobile App(lication),

DRIVE App(lication) for Android, TN360 Sentinel ELD App(lication), TN360 Messaging App(lication), Insights from TN360, TN360 SmartJobs App(lication), TN360 EasyDocs App(lication), TN360 Forms App(lication), Journey Planner App(lication), SmartNav Route App(lication), TN360 Pre-trip Checklist App(lication), TN360 dashboard/software platform, TN360 Fleet Management Software, TN360 ACM Equipment Management Software, GPS Asset Tracking Systems, (each of the forgoing, a "Teletrac App," and collectively, the "Teletrac Apps"), and associated hardware, software, applications, and functionality (collectively, the "Accused Products").

19.    The Accused Products perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various communication standards, protocols, and implementations, including, but not limited to, Bluetooth, IEEE 802.11, and LTE protocols and various subsections thereof, including, but not limited to, 802.11a, 802.11ac, 802.11b, 802.11g, and 802.11n.

20.    The wireless communications performed and/or implemented by the Accused Products, among other things, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols.

21.    The Accused Products also track, analyze, and report vehicle maintenance needs, track or cause to be tracked vehicle locations, and allow for communication between a system administrator and a remote unit, including broadcasting advisory communications.



(Source: https://fleetlogging.com/teletrac-navman/)



(Source: https://www.dnavdeej.com/teletrac-navman-complexity)

Teletrac Drive is a comprehensive application suite for Android™ that offers users a variety of advanced in-vehicle apps, including turn-by-turn, voice guided navigation and two-way messaging. Teletrac Android-based tablets are fully equipped with the built-in Drive suite and Bluetooth capable, allowing drivers to stay guided and connected via a wireless, easy-to-use platform.

This guide describes how to use the Navigation and Messaging Apps, as well as how to set Bluetooth connection for in-vehicle device use.

(Source: https://community.teletrac.com/teletrac.com/assets/2014-04-23_android%20tablet%20user%20guide.pdf)

**Introduction to the Fleet Director Tablet**



**Note:** The above image displays the Main Screen on the Tablet configured for HOS.

**Tablet Modes**

*The following information is only when the HOS application is configured for the vehicle.*

The Tablet is connected to the Prism unit (black box) which is installed in the vehicle. The Prism unit in turn is connected to the vehicle's diagnostics and knows whether the vehicle is moving or stationary at any given time. The Prism unit can then command the Tablet to lock or unlock for use depending on vehicle movement. This feature is in place for safety reasons.

(Source: https://community.teletrac.com/teletrac.com/
assets/fleetdirector%20tabletguide_hos.pdf)

Download The Case Study Here.
When Teletrac was choosing a platform to provide more value to customers earlier this year they turned to Android.
A new case study by Samsung illustrates how Teletrac has built a more robust and flexible logistics platform for its customers and their drivers on the Android platform.

A key way has been by integrating Samsung's Galaxy Tab and its Android operating system to host Teletrac's Drive app. Teletrac Drive for Android allows users to access multiple app-based functions, such as messaging, GPS navigation and compliance solutions.

The app suite is currently available on the Teletrac Tablet for Android and the 7-inch Samsung Galaxy Tab 3.
The case study notes the benefits of the Tablet, including wireless connectivity: "The Teletrac system includes a Vehicle Location Unit (VLU), which is a small device installed in the truck and pings location and diagnostic information back to the Teletrac Cloud Services and Fleet Director Software. Unlike the previous tablet that had to be hard-wired to the VLU, the Samsung Galaxy Tab wirelessly connects to the VLU over Bluetooth, which significantly reduces installation time and cost. Depending on customer preference, the tablet can be removed from the enclosure and used by drivers when they stop for meals or overnight rests."
Customers with the Android offering have embraced the new user experience. Teletrac customer A.N. Webber noted it takes them less time to download logs, access reports and receive updates on delivery routes. "The trucking business is highly competitive, and we are always looking for ways to improve driver productivity and satisfaction," said Rob Koch, Vice President of Operations, A.N. Webber.

(Source: https://www.teletracnavman.com/resources/blog/samsung-highlights-gps-benefits)

22.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,549,583**

23.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

24.     The USPTO duly issued U.S. Patent No. 6,549,583 (hereinafter, the "'583 patent") on April 15, 2003 after full and fair examination of Application No. 09/790,429 which was filed on February 21, 2001.

25.     FCS owns all substantial rights, interest, and title in and to the '583

patent, including the sole and exclusive right to prosecute this action and enforce the '583 patent against infringers and to collect damages for all relevant times.

26.     The claims of the '583 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting error estimation methods.

27.     The written description of the '583 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

28.     Based upon information and belief, FCS is informed and believes that Defendant has directly infringed one or more claims of the '583 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

29.     Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '583 patent.

30.     An example of Defendant's infringement of claim 1 is provided in **Exhibit A**.

31.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '583 patent.

32.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.   Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 6,633,616**

33.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

34.     The USPTO duly issued U.S. Patent No. 6,633,616 (hereinafter, the "'616 patent") on October 14, 2003 after full and fair examination of Application No. 09/935,081 which was filed on August 21, 2001.

35.     FCS owns all substantial rights, interest, and title in and to the '616 patent, including the sole and exclusive right to prosecute this action and enforce the '616 patent against infringers and to collect damages for all relevant times.

36.     The claims of the '616 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods of producing or generating a pilot phase error metric.

37.     The written description of the '616 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

38.     Based upon information and belief, FCS is informed and believes that Defendant has directly infringed one or more claims of the '616 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

39.     Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 12 of the '616 patent.

40.     An example of Defendant's infringement of claim 12 is provided in **Exhibit B**.

41.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '616 patent.

42.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 6,941,223

43.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

44.     The USPTO duly issued U.S. Patent No. 6,941,223 (hereinafter, the "'223 patent") on September 6, 2005 after full and fair examination of Application No. 10/339,663 which was filed on January 10, 2003.

45.     FCS owns all substantial rights, interest, and title in and to the '223 patent, including the sole and exclusive right to prosecute this action and enforce the '223 patent against infringers and to collect damages for all relevant times.

46.     The claims of the '223 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting error estimation methods.

47.     The written description of the '223 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

48.     Based upon information and belief, FCS is informed and believes that Defendant has directly infringed one or more claims of the '223 patent by making,

13

using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

49.     Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 19 of the '223 patent.

50.     An example of Defendant's infringement of claim 19 is provided in **Exhibit C**.

51.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '223 patent.

52.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,058,040

53.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

54.     The USPTO duly issued U.S. Patent No. 7,058,040 (hereinafter, the "'040 patent") on June 6, 2006 after full and fair examination of Application No. 09/962.,718 which was filed on September 21. 2001.

55.     FCS owns all substantial rights, interest, and title in and to the '040 patent, including the sole and exclusive right to prosecute this action and enforce the '040 patent against infringers and to collect damages for all relevant times.

56.     The claims of the '040 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods of transmitting data over media having overlapping frequencies.

57.     The written description of the '040 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

58.     Based upon information and belief, FCS is informed and believes that Defendant has directly infringed one or more claims of the '040 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

59.     Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '040 patent.

60.     An example of Defendant's infringement of claim 1 is provided in **Exhibit D**.

61.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '040 patent.

62.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,123,926**

63.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

64.     The USPTO duly issued U.S. Patent No. 7,123,926 (the "'926 patent") on August 15, 2006, after full and fair examination of Application No. 10/679,784 which was filed on October 6, 2003.

65.     FCS owns all substantial rights, interest, and title in and to the '926

patent, including the sole and exclusive right to prosecute this action and enforce the '926 patent against infringers and to collect damages for all relevant times.

66.     The claims of the '926 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

67.     The written description of the '926 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

68.     Based upon information and belief, FCS is informed and believes that Defendant has directly infringed one or more claims of the '926 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

69.     Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '926 patent.

70.     An example of Defendant's infringement of claim 1 is provided in **Exhibit E**.

71.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '926 patent.

72.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.   Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,260,153**

73.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

74.     The USPTO duly issued U.S. Patent No. 7,260,153 (hereinafter, the "'153 patent") on August 21, 2007 after full and fair examination of Application No. 10/423,447 which was filed on April 28, 2003.

75.     FCS owns all substantial rights, interest, and title in and to the '153 patent, including the sole and exclusive right to prosecute this action and enforce the '153 patent against infringers and to collect damages for all relevant times.

76.     The claims of the '153 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

77.     The written description of the '153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

78.     Based upon information and belief, FCS is informed and believes that Defendant has directly infringed one or more claims of the '153 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

79.     Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '153 patent.

80.     An example of Defendant's infringement of claim 1 is provided in **Exhibit F**.

81.     Since at least the time of receiving the original complaint in this action,

Defendant has indirectly infringed and continues to indirectly infringe the '153 patent by inducing others to directly infringe the '153 patent. Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, contractors, customers and/or potential customers, to directly infringe, either literally or under the doctrine of equivalents, the '153 patent by providing or requiring use of the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '153 patent, including, for example, claim 1.

82.     Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support on its website/dashboard and/or *via* the Teletrac Apps. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '153 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '153 patent. Defendant's inducement is ongoing.

83.     Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '153 patent. Defendant has contributed and continues to contribute to the direct infringement of the '153 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '153 patent,

including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '153 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

84.    Defendant had knowledge of the '153 patent at least as of the date when it was notified of the filing of this action.

85.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of FCS's patent rights.

86.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

87.    Defendant's direct infringement of the '153 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

88.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '153 patent.

89.    FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

90.    FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has and will continue to suffer this harm by virtue of Defendant's infringement of the '153 patent.

Defendant's actions have interfered with and will interfere with FCS's ability to license technology.   The balance of hardships favors FCS's ability to commercialize its own ideas and technology.   The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,450,955

91.    FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

92.    The USPTO duly issued U.S. Patent No. 7,450,955 (hereinafter, the "'955 patent") on November 11, 2008 after full and fair examination of Application No. 11/524,858 which was filed on September 20, 2006.   A Certificate of Correction was issued on September 24, 2013.  A second Certificate of Correction was issued on May 1, 2018.

93.    FCS owns all substantial rights, interest, and title in and to the '955 patent, including the sole and exclusive right to prosecute this action and enforce the '955 patent against infringers and to collect damages for all relevant times.

94.    The claims of the '955 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems for tracking vehicle maintenance information.

95.    The written description of the '955 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

96.    Based upon information and belief, FCS is informed and believes that

Defendant has directly infringed one or more claims of the '955 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

97.    Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '955 patent.

98.    An example of Defendant's infringement of claim 1 is provided in **Exhibit G**.

99.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '955 patent.

100.    FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 7,747,291**

101.    FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

102.    The USPTO duly issued U.S. Patent No. 7,747,291 (hereinafter, the "'291 patent") on June 29, 2010 after full and fair examination of Application No. 12/546,650 which was filed on August 24, 2009.

103.    FCS owns all substantial rights, interest, and title in and to the '291 patent, including the sole and exclusive right to prosecute this action and enforce the '291 patent against infringers and to collect damages for all relevant times.

104.    The claims of the '291 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function

and operation of preexisting systems and methods for mobile vehicle-based communications systems utilizing short-range communication links.

105.    The written description of the '291 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

106.    Based upon information and belief, FCS is informed and believes that Defendant has directly infringed one or more claims of the '291 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

107.    Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 20 of the '291 patent.

108.    An example of Defendant's infringement of claim 20 is provided in **Exhibit H**.

109.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '291 patent.

110.    FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IX: INFRINGEMENT OF U.S. PATENT NO. 8,005,053

111.    FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

112.    The USPTO duly issued U.S. Patent No. 8,005,053 (hereinafter, the

"'053 patent") on August 23, 2011 after full and fair examination of Application No. 12/696,760 which was filed on January 29, 2010.  A Certificate of Correction was issued on February 14, 2012.

113.    FCS owns all substantial rights, interest, and title in and to the '053 patent, including the sole and exclusive right to prosecute this action and enforce the '053 patent against infringers and to collect damages for all relevant times.

114.    The claims of the '053 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of data transmission in wireless communication systems.

115.    The written description of the '053 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

116.    Based upon information and belief, FCS is informed and believes that Defendant has directly infringed one or more claims of the '053 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

117.    Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '053 patent.

118.    An example of Defendant's infringement of claim 1 is provided in **Exhibit I**.

119.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '053 patent.

120.   FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT X: INFRINGEMENT OF U.S. PATENT NO. 8,862,184**

121.   FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

122.   The USPTO duly issued U.S. Patent No. 8,862,184 (hereinafter, the "'184 patent") on October 14, 2014 after full and fair examination of Application No. 13/925,692 which was filed on June 24, 2013.

123.   FCS owns all substantial rights, interest, and title in and to the '184 patent, including the sole and exclusive right to prosecute this action and enforce the '184 patent against infringers and to collect damages for all relevant times.

124.   The claims of the '184 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of collecting and communicating field data based on geographical location.

125.   The written description of the '184 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

126.   Based upon information and belief, FCS is informed and believes that Defendant has directly infringed one or more claims of the '184 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the

Accused Products.

127. Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '184 patent.

128. An example of Defendant's infringement of claim 1 is provided in **Exhibit J**.

129. FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '184 patent.

130. FCS has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT XI: INFRINGEMENT OF U.S. PATENT NO. 10,671,949**

131. FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

132. The USPTO duly issued U.S. Patent No. 10,671,949 (hereinafter, the "'949 patent") on June 2, 2020 after full and fair examination of Application No. 15/660,685 which was filed on July 26, 2017.

133. FCS owns all substantial rights, interest, and title in and to the '949 patent, including the sole and exclusive right to prosecute this action and enforce the 949 patent against infringers and to collect damages for all relevant times.

134. The claims of the '949 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of managing mobile field assets via wireless handheld devices.

135. The written description of the '949 patent describes in technical detail

each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

136.    Based upon information and belief, FCS is informed and believes that Defendant has directly infringed one or more claims of the '949 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

137.    Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '949 patent.

138.    An example of Defendant's infringement of claim 1 is provided in **Exhibit K**.

139.    FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '949 patent.

140.    Since at least the time of receiving the original complaint in this action, Defendant indirectly infringed one or more claims of the '949 patent by inducing others to directly infringe said claims. Defendant has induced end-users, including, but not limited to, its employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '949 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '949 patent, including, for example, Claim 1.

141.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in

an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant performed these steps, which constitute induced infringement with the knowledge of the '949 patent and with the knowledge that the induced acts constitute infringement.  Defendant was aware that the normal and customary use of the Accused Products by others would infringe the '949 patent.  Defendant's inducement is ongoing.

142.   Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '949 patent.  Defendant has contributed and continues to contribute to the direct infringement of the '949 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '949 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '949 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

143.   Defendant has had knowledge of the '949 Patent since at least the time of receiving the original complaint in this action.

144.   Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Fleet Connect's patent rights.

145.   Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

146.   Defendant's direct infringement of the '949 patent was willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under

the patent.

147.    Defendant's aforesaid activities have been without authority and/or license from Fleet Connect.

148.    Fleet Connect is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**JURY DEMAND**

149.    FCS hereby requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

150.    FCS requests that the Court find in its favor and against Defendant, and that the Court grant FCS the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.    An award of a reasonable royalty for infringement Asserted Patents;

c.    A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '153 patent and '949 patent, or, in the alternative, an award of a reasonable ongoing royalty for future infringement of these patents by such entities;

d.    Judgment that Defendant accounts for and pays to FCS all damages to and costs incurred by FCS because of Defendant's infringing activities and other conduct complained of herein;

e.    Judgment that Defendant's infringements be found willful as to the '153 patent and '949 patent and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

f.  Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

g.  That this Court declare this an exceptional case and award FCS its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

h.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: July 12, 2024          Respectfully submitted,

*/s/ Steven W. Ritcheson*
Steven W. Ritcheson (SBN 174062)
**INSIGHT, PLLC**
578 Washington Blvd., #503
Marina del Rey, California 90292
Telephone: (424) 289-9191
Email: swritcheson@insightplc.com

Travis E. Lynch (SBN 335684)
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1862
Email: lynch@rhmtrial.com

*Attorneys for Plaintiff FLEET CONNECT SOLUTIONS LLC*